Pellant, you may proceed. May it please the Court, good morning, Regina Lennox for the Plaintiff Appellants. We respectfully request this Court reverse the District Court's grant of Defendant Delta Air Lines' motion to dismiss the Plaintiff's complaint, which challenges the Defendant's ban on the transport of Big Five hunting trophies. However, Your Honors, this case is not about hunting trophies. It is about the essential role that hunting plays in the conservation systems of southern and eastern Africa, in the countries with the largest population… The case is about whether Delta Air Lines has to carry your cargo. Well, Your Honor… That's the case. Respectfully, Your Honor, but there's a public policy interest that is being ignored by… Public policy interests don't override federal law. But it's the public policy of the federal law, Your Honor. The Endangered Species Act only allows for the import of hunting trophies when it has been shown that the underlying hunting enhances the survival of the species. And the Fish and Wildlife Service has repeatedly issued permits to import hunting trophies of the Big Five. I fail to see how we can go against the pertinent law that applies to carriers like Delta by looking to some other federal law. I don't think it overrides it. They're either required to carry your cargo or they're not. I'm sorry, Your Honor, we don't mean to suggest it overrides it, but in general, a common carrier is a public servant. It receives benefits of public access and public licensure. And in so doing, it owes a duty to the public. It's heavily regulated, right? Common carriers are regulated, Your Honor. Heavily regulated is a judgment. They are. I guess the reason I'm asking is if you simultaneously have a complaint in front of the FAA on this point, why isn't there any exhaustion requirement in Title 49? You don't see that there is one? We haven't seen anything in the case law on that, Your Honor. And in point of fact, the FAA hasn't done anything with respect to that. Well, the 28J alerted us that it has been rooted appropriately. And your footnote points out that they have to rule on that complaint. So why are we proceeding in two tracks? Because the common law right still exists, Your Honor. Okay. The common law cause of action. That's fine. But as to your statutory argument, that would be one where we would hold off? You're just pursuing the Federal common law argument? We haven't seen anything in the case law suggesting there has to be a — that we have to satisfy any administrative remedies requirement first, or that that's any — that that precludes our ability to bring an action under Section 414. But it dovetails into the significantly engaged point as to whether there is even a private right of action here after Sandoval. So let me phrase that as a question. Is there any circuit that has found a private right action after Sandoval? District courts in the — Any circuit court. No circuit has considered it, as far as I can tell, though, Your Honor. And in point of fact, several circuits, including this one implicitly, and the 2nd, 7th, 9th, D.C., and 3rd circuits directly, found a private right of action under the predecessor to Section 41310A, following a court-versus-ash analysis, and despite the existence of provisions like the ability to bring a complaint before the Secretary of Transportation. So these predecessor cases didn't have any difficulty. If we get to the merits, what's your best case that under Federal common law, the rule isn't just they can't withhold people, but they can decide what they want to decide with cargo? Our best cases, Your Honor, one would be the Hart v. Choctaw case from the 8th Circuit. Another one would be just with respect to — Federal common law only. Federal common law only. Your Honors, we — What is the status of the identical administrative claim filed by the Conservation Force and Knowlton? We served a complaint, Your Honor, and Delta, upon our prodding, served an answer, and no actions have proceeded since. Now it's an investigation by the Secretary of Transportation, and nothing has happened. The reason it seems that they might be the right authority is that that provision does contemplate reasonable. You can't have unreasonable discrimination. So they would be the ones that would say, okay, well, a carrier can transport magazines, but they might say not pornographic magazines, or they might allow euthanasia drugs, but not as used to humans because companies like Delta are worried above all about negative publicity. So it would seem to me arguably reasonable that they would be able to exclude cargo that their purchasing public would find very offensive. Well, again, Your Honors, the Court's interpreting Section 404B and Delta concedes Section 41310A is the successor to Section 404B didn't have any difficulty in evaluating the reasonableness of a claim. I'll direct you specifically to the Third Circuit's opinion in Polanski where the Court didn't imply a private right of action under Section 404B because it didn't find that that — the plaintiffs were claiming unreasonable discrimination there. They weren't finding that that — the claim the plaintiffs were trying to bring was in keeping with the purposes of the statute or that reasonableness required. Unreasonable would seem to be the Missouri Pacific case where, okay, we won't — we'll take — what was it? Timber. We won't take cotton. But really the purpose was to exclude the mill. They wanted to exclude people. That's going to be unreasonable discrimination always. I don't see a case that stands for it's unreasonable for a carrier to say we don't want Cecil the lion's head in our plane because if the American public that loves lions sees that, they'll all stop coming to Delta. That seems to be the business decision they made, and why isn't that reasonable? Well, Your Honor, so there's a couple of issues with that. First, you're raising the common law cause of action. No, I'm focusing on the reasonableness term in the Federal statute, unless I'm misreading the statute. 41310, no unreasonable discrimination. But the Missouri Pacific case obviously preceded the existence of that statute. True. I said the Missouri — I've been fairly convinced that common law doesn't stand for the proposition that you can tell a carrier they've got to carry whatever cargo they don't want to carry. I think you've got a better case under the Federal statute, which my instinct would mean should be in front of the regulatory agency in the first instance. But that's how I'm thinking about this. Well, so, Your Honor, just evaluating the reasonableness in general and looking at some of the common law precedent. Let me see if I can convince you there is a common law right. Yeah, no, you should. A common carrier is permitted to hold itself out to carry certain classes of goods. Harvard Law Review 1910, however, noted that — excuse me — a common carrier must accept all goods not fundamentally different in character in the class. A carrier of valuables must carry money, and a truckman professing to carry heavy things must carry machinery. So class of goods requires — is defined more broadly than — By the Harvard Law Review. By the Harvard Law Review, collecting cases at the time in 1910, Your Honor, so compiling the law as it existed contemporaneously. A common carrier may change the scope of its services, but in so doing, the common law requires it acting good faith and have an operational reason. And again, I'd point you to the Harp case. I'd point you to the B.J. Allen v. ICC case. I'd point you to Ocean Steamship — Why isn't it good faith to say we don't want Cecil the Lion in our plane when the Americans love these particular big species? Why isn't that good faith? Your Honor, we have real concerns with a common carrier being able to change the scope of its services based on what's trending in the social media. But I gave you an example of magazines. Fine. We'll have magazines, but we won't have pornography. Well, Your Honor, it's not really a common carrier's right to suddenly withdraw services it has offered unless it has a reason to do so. Again, a common carrier is a public servant, and as such, it owes the public a duty. It has entered into essentially a codependent relationship. It's not a private carrier that has the ability to restrict what it offers with each transport. The very purpose of a common carrier is it doesn't get to pick and choose. It doesn't get to say we won't carry pornographic magazines, but we'll carry these other magazines. Really? So your principle would be that, too? So you would accept that hypothetical? Your Honor, unless the common carrier can offer an operational reason to do so. And so I direct you again to the B.J. Allen case. And negative publicity is not a legitimate reason? It's not a legitimate reason. It's not operational, Your Honor. And point of fact, this was a lucrative market, and so Delta made a business reason that was getting rid of quite a large selection of customers. What if they just say, fine, if we're stuck with it, we don't want to lose all our ticket sales, so then no trophies? Your Honors, again, that action wouldn't be taken in good faith, and they wouldn't have an operational reason. Delta holds itself out to carry pretty much everything. It carries dangerous goods. It carries prescription drugs. It carries live animals. So it doesn't have the ability to suddenly withdraw this class of goods that is really no different from carrying leather coats and bones. And, Your Honors, there is a purpose to that. Because, you know, to give you a hypothetical, our current president is hotly discussed in the social media. Whether Delta chose to support the president by banning the transport of goods by companies that spoke out against him or to ban Trump-branded goods, Delta is suddenly dictating what can be shipped based on whether it agrees with or disagrees with a particular policy. They're not dictating what can be shipped. They're just dictating what can be shipped on Delta. Wouldn't the market take care of it? Won't other transporters, other people who will ship FedEx, UPS, won't the market take care of that? Well, Your Honors, certainly there would be commercial incentives, and the market would adjust, which it has here. But that doesn't change that the common carrier owes a duty, and that duty is to carry indiscriminately. And no company has to become a common carrier. A company chooses to enter into that role, and when it does, then it takes on the obligations of equal treatment. Did you write this reply brief for Conservation Force? I wrote much of it, Your Honor. Did you write this paragraph under summary of the reply, Delta's opposition brief employs three litigation tactics from Advocacy 101? I did, Your Honor. That's not a way to impress federal judges. Thank you, Your Honor, duly noted. And I apologize for your not liking it. Turning to our second point, Your Honors. Not that I don't like it. It's of no assistance to us, and it just wastes our time, and it's not the type of advocacy we like to see in this court. I apologize, Your Honor. Where do you practice law? I practice here in the federal wildlife law, Your Honor, and I apologize for wasting your time. I would certainly never wish to do that. Mr. Jackson, his opening brief had him with a D.C. bar number, and now the reply brief has him with a Louisiana bar number. Has he also moved? He's barred in both jurisdictions, Your Honor. Just used one and one and one and the other. That was his preference, Your Honor. All right. So the logic, but your point that is maybe one that I find more sympathetic is, carriers take all pets. Then it turns out snub, I happen to know this because I have a dog, snub those dogs have more injuries on planes. So then a lot of the airlines decided to no more snub those dogs. They're taking all dogs, then they decide not to. The market adjusts immediately, and United steps in with air-conditioned pet cargos. They'll take the snub those, and they make a lot of money. So the key would be your statement, good faith. Exactly, Your Honor. Wouldn't that be the FAA to try to find out whether or not this adjustment was one done in good faith? I would think good faith could include they don't want to see their clientele stop flying on Delta. It would be both, Your Honor. The FAA has a role, and the common law has a role, and there are different remedies associated with both. So this is back to principally relying on the common law argument. So we're relying on both, Your Honor, though, because to our second point, the numerous courts recognized a cause of action under Section 404B. When Congress reincorporated Section 404B as Section 41310A, it explicitly stated it was codifying and not substantively changing the law, and it wasn't changing. It was adopting the judicial interpretations associated with it. And Delta concedes that when Congress renews or reenacts a statute, it is presumed to know and adopt those judicial interpretations. So the prior judicial interpretations under Section 404B were incorporated with Section 41310A. Now, there are different remedies available, and in the administrative claim, there may be different remedies available, too. But we're proceeding under both tracks because, as you noted, there's a reasonableness standard in Section 41310A. And, again, because this case is important with respect to the conservation outcomes, we are proceeding to cover all our bases. And now, quickly turning to my last point, the district court read the preemption provision of the Airline Deregulation Act far too broadly. Essentially, it read it to apply to all statements related to the carriage of cargo, and not just statements related to an airline's services. Delta's announcement of its ban had three sentences, not just one. And two of those sentences did not relate to services. Very quickly about the court not allowing an amended complaint. I understand you asked to amend your complaint in a footnote. Was any sort of motion to reconsider filed with the district judge asking for leave to amend? May I answer, Your Honor? Of course. I wouldn't have asked you if you couldn't answer. Thank you, Your Honor. No motion for reconsideration was filed, Your Honor. But under this circuit's precedent, it's the litigant's option to file the motion for reconsideration or reopening of the judgment or to pursue the issue on appeal. I understand. I'm just curious as to the procedure that was followed. All right. Thank you. Thank you. Thank you, Counsel. Good morning, Your Honors, and may it please the Court. Delta has decided that it is not willing to carry Big Five hunting trophies as cargo. And the reason we're here this morning is the plaintiffs want this Court to tell Delta that even though we don't want to carry those trophies, we have to. You filed the 28-J notifying us about the fact that there's an investigation and a complaint. Why isn't Delta urging that there's an exhaustion requirement? You've looked at the law and it doesn't exist? Essentially, that's correct, Judge Higginson. There's clearly an exhaustion requirement, or not even an exhaustion requirement, an exclusive. Primary jurisdiction? I think the Court could, if in its discretion, choose to sort of abstain or hold its decision in this case under the doctrine of primary jurisdiction. There's no need for the Court to do so because there's clearly good grounds to dismiss this case without seeing what the agency does first. That's just that I already won. I'm on a winning streak. Exactly. That's probably a better way to put it. The statutory remedy that the plaintiffs have pursued is not an exhaustion requirement. It's an exclusive remedy. The Federal Aviation Act is very clear. You can go to the Department of Transportation, have an administrative proceeding, take an appeal either to the D.C. Circuit or to this circuit when that proceeding is resolved, and there's no procedure for a follow-on action or a parallel action in federal court. That's the exclusive remedy that the statute provides, which is very good evidence that the Congress did not intend for a private right of action under the statute in federal court. They've explicitly provided one remedy, made a conscious choice not to provide a second remedy under the statute and under the Sandoval analysis. That's essentially conclusive on the question of whether they intend to. That's the threshold question you think we have to reach? The threshold question? Whether or not our Smith jurisprudence, even with the interruption of Sandoval, allows us to hear this private right of action. The court can dismiss. Chief Judge Lind dismissed on the basis that there's no private right of action. The parties have, the plaintiffs in particular, have taken the position in this case that the common law claim is substantively coextensive with the statutory claim. So for all the reasons that the common law claim fails, the statutory claim fails, so that if it is available to the court as an alternate grounds to affirm the dismissal of the statutory claim, we don't think the court needs to rely on that because, for all the reasons we explained in our brief, none of this court's precedents actually established a private right of action under Section 404B. Circling back a little bit on should we await the administrative ruling, not all of the plaintiffs in this action filed that administrative ruling, only two of the, what, four or five plaintiffs. That's correct. Conservation Force and I believe Mr. Knowlton. Knowlton. But there are three others, Dallas Safari Club, Houston Safari Club, four others, Campfire Association and Tanzania Hunting Operators Association. That's right. So I think that would weigh in favor of, you know, a decision in this matter. And I think a decision from this court would be of assistance to the Department of Transportation as it considers their administrative claim. Opposing counsel threw out an intriguing hypothetical. What if an airline says we transport perfume but not Ivanka Trump perfume? It's not clear to me that would be a permissible policy, and that gets to the basic nature of this common law duty of nondiscrimination, which is it prohibits discrimination against people, not things. It's customers, not cargo. So if an airline has singled out one customer, one manufacturer of a perfume, and says we'll carry everyone else's perfume but not yours, it's not clear to me that that fits within the carrier's rights under the common law, that you're singling out one. What's the best common law case that describes how we distinguish between a singled out item versus a class that's acceptable? What's the best discussion of that? The distinction between cargo and people? Well, cargo and people qua single item. If you're accepting that as a possible discriminatory impermissibility, that's sort of the Missouri Pacific example, but isn't she saying, well, you singled out hunters of just these five species? Right. But I want to get back to what's the best case that helps me come up with a rule that applies to the future. The Hart case from the Circuit Court in the Western District of Arkansas has a very helpful explanation of the distinction between methods of transportation and cargo versus shippers. And the Missouri Pacific case itself says the railroad had singled out the mill company. The Supreme Court says you can't do that. But the Supreme Court immediately goes on to say what you could do if you want to is change your policy. You could stop accepting these special transport cards from anyone. And if you did that, you'd have no problem under the common law. So that speaks to the point they've made that you can't change things midstream. The Supreme Court has affirmatively said that you can. And I think it also speaks to the difference that as long as your policy applies to cargo, the fact that its impact might fall on a handful of shippers doesn't make it an impermissible form of discrimination. Any cargo policy is going to impact only the people who want to ship that cargo. The way the common law assesses it — Roberts. Does Delta accept my premise that they made this decision precisely because it just — it's a bottom-line business decision that Americans happen to love these species, whether it's a rational set of species or not. The Delta customers like them, and they would be upset at Delta. Is that what's basically going on? That's a — they affirmatively pleaded that in the complaint. But — yes. Okay. We don't dispute the characterization. So it could even be completely built on the Cecil the Lion incident. Right. The carrier in its business judgment can change its cargo policies for whatever reason it sees fit. And that's — there are cases going back more than 100 years that say that you can do this for selfish business reasons, that if you think you're going to make more money doing it, that's a good enough reason for you to make this change. The notion that it can only be for operational necessity or safety or liability reasons, the case law just doesn't support that. The language that the cases used in the 1800s was public morals. But it can't be for bad faith. Correct. Okay. The complaint does not plead, or the opening brief did not argue, that bad faith was a separate basis to reject this ban. That argument kind of comes out in the reply. It's not clear to me if that was intended as a separate grounds for challenging the ban or it's just a gloss on the one that was pleaded and argued. But that — the good faith question, I think, speaks to — is an aspect of discrimination. You know, you can't discriminate unreasonably and in bad faith. Well, first, before we get to that question, we have to define what discrimination is. And the basic rule is if a carrier offers a service to the public, it has to offer it to everyone even-handedly on equal terms. We're worried about people, not things. Exactly. That's the basic distinction that we think decides this case, that if Delta ships bananas for Jane, it has to ship them for Tom. But if Delta doesn't ship bananas for anyone, nobody can claim they're being treated any differently from any other customer. That's the basic rationale that Chief Judge Land adopted. In her opinion, we think she got it exactly right. The slight irony to me, and I'm going to stop asking too many questions, is it seems like both the litigants here are very concerned about conservation. Delta is concerned about conservation just as much as the hunters are who pay for all the conservation. That's right. And I do want to say, I'm not sure how legally operative this is, but Delta— You're agreeing that Delta's chief concern is conservation? I thought it was customers. No, Delta— Property. Delta is concerned with conservation. They don't want to lose customers who are opposed to them shipping these big five. Right. That's the—I don't mean to represent that conservation drove this decision. All right. You certainly know what I'm trying to say. Delta— Well, you've earlier said you're bound by the complaint. Right. And there— There ought to be six motions. That's correct. And the complaint's allegation was this was a profit-driven decision in response to noisy Facebook protesters. But I do want to kind of respond to the idea that this is anti-hunting or anti-hunters. Well, is that in the record? What's that? I'm sorry, Your Honor. That Delta—that this is all about anti-hunting on Delta's part. Again, you're before us on the 12B6, or they are. There is an allegation in the complaint that the reason for the ban was kind of a knee-jerk response to noisy Facebook protesters. So I don't— Why do you need to reply to that? We—our reply is that we don't need to. Well, good. Let's move on. Yeah. I set you up. I asked you that question. So— But your correct answer is to Judge Barksdale. It's not in this case. On the sort of the legal force of their argument, they've invoked this Ocean Steamship case, which Judge Higginson was discussing, where you had a carrier who preferred And that's a case they've cited as supporting their position. But again, that case says two things that are very helpful to us. One is the whole reason we're finding this steamship liable is because you hold yourself out as willing to carry lumber. So if you do that, you have to carry it. Paragraph 41 of the complaint affirmatively pleads that Delta does not hold itself out as willing to carry Big Five hunting trophies. So that's the fundamental distinction. This is not an on-the-fly, bad-faith decision. Delta announced a policy publicly in advance, applies to all shippers. Everyone in the public is on notice of that. And the Ocean Steamship case, just like the Supreme Court's decision in MOPAC, said, if this carrier doesn't want to carry lumber and if it thinks it can make more money carrying cotton, it can do that. It can change its holding out and no longer carry lumber for anybody. That's its right as a business owner. A common carrier has the same right as any other business owner to define the scope of its services. The common law is not going to force you to do business against your will. And that's the HAARP case from the Western District of Arkansas articulates that principle very well, that is it the customer who decides what the business is like or is it the common carrier? Delta is the only airline, U.S. airline, that does the direct Africa-U.S. flights? That's not in the record. I believe that's the case, that Atlanta to Johannesburg is the only direct flight from the continental United States to southern or eastern Africa, unless you want to count Nairobi as eastern Africa. I don't know if that's right. But there are alternative methods of transportation, non-direct, common carrier on air. There are private carriers. There are contract carriers. There are railroads and steamships. I mean, there's a lot of ways to ship things other than just one American airline. Because they pled that the Endangered Species Act permits were obtained. So from the standpoint of Fish and Wildlife Service, they've said it's okay to bring these in. That's right. And Delta is not trying to prevent them from going hunting. We'll carry them as passengers to go on these hunts. They can ship their hunting supplies on our cargo planes to go down and go on these hunts. And all we're saying is we have made the business decision not to carry the trophies home on our cargo planes. And that's not an anti-hunting message. That doesn't prevent anybody from going hunting. That's just a common carrier setting the scope of its business as, you know, I think we cited a case going back to 1836 saying a common carrier has the right to do that. I'm happy to answer any other questions the Court might have on the leave. How about addressing the fact that the complaint was dismissed with prejudice instead of the usual without prejudice on a 12b6 ruling? Certainly. We asked the Court in our motion to dismiss with prejudice. Because we said amendment would be futile. And we think Judge Lynn was correct to conclude implicitly that amendment would have been futile. And the plaintiffs had four separate opportunities to file a motion for leave to amend. Under Rule 15, they could do it as of right within 21 days after we filed our motion. After they chose to answer the motion instead of amending, they had about four months where they could have sought leave and filed an amended complaint. Then Chief Judge Lynn entered a scheduling order that said they can amend as of right until August. They don't even have to seek leave. They didn't do it then. Then she dismissed the case. They had 28 days where they could have filed a motion for reconsideration. And this Court's decision in the Willard case said you can seek leave to amend as part of a Rule 59 motion for reconsideration. So they had four separate windows to seek leave. They never did it. They had a conditional request and a footnote saying we'd like to seek leave to amend if you dismiss. They didn't say on what grounds. They didn't say what facts they would add. They never attached a copy of their amended complaint like the local rules require. So even putting aside the waiver problem, we think it's pretty clear that the utility of an amendment was good grounds for the dismissal with prejudice. And if the Court doesn't have anything else, I'm happy to yield the balance of my time. Thank you, Your Honor. Thank you. Rebuttal. Thank you, Your Honors. Briefly on the amendment question, this case was dismissed in June. The Court's order didn't clearly state with prejudice or without. And the scheduling order allowed us to amend as of right until August. And so factually, we expected an opportunity to be able to amend. And throughout our brief, although we admit we didn't attach an amended pleading, but we identified how we would plead should we be granted leave to amend. On the point, as you were asking, Judge Higginson, of a common carrier may not discriminate against people. You know, that's a very fine line, Your Honors, because as noted, a carrier may carry everything but Ivanka Trump perfume. Well, who is the obvious target? Let's go back to your saying that you weren't aware, in effect, that the judge was saying that dismissal was with prejudice. It so states in the final judgment on the 13th day of June, with prejudice. Dismisses plaintiff's complaint with prejudice. I'm sorry, Your Honor. I must have missed that. Well, I'm sorry. In the final judgment, yes. The final judgment, not the memorandum order. The judgment is what controls. You're right, Your Honor. Exactly. But at that point when the order was issued, if we had initially realized that there was, that we were not going to get a chance to amend, we would have moved more quickly. So you're 100 percent right, the final judgment dismissed it with prejudice. But it wasn't clear to us from the memorandum that that was going to be the case. Well, how much in advance of the judgment was the memorandum? Let's look at that. Tab 4. A week, Your Honor. Ma'am? I believe it was a week. Yes. And your time to appeal runs from your judgment. Yes. In any event. Just turning, it's a very fine line as to if you ban a certain product, whether it relates back to the shipper. You ban Ivanka Trump perfume, that may be a product, but what's the intended target of that? Why was Ivanka Trump perfume banned? And it's a little bit dangerous to allow a carrier to say, well, we'll carry all perfume but that one. Again, the common law suggested a class was too broadly defined to allow that sort of slicing and dicing. And secondly, that appears to be a bad faith action to us, Your Honors. And we would suggest our complaint does plead bad faith. Well, that's my question. What is your response to Delta saying it's not sure you ever relied on bad faith in district court? It was more discrimination. Your Honor, we pled that three months before Delta banned the transport of Big Five trophies, it actually affirmed it would continue to carry them. Then when the media and social media outcry arose over the allegedly illegal hunt of Cess of the Lion, Delta immediately knee-jerk instituted this ban. In your complaint, do you use the words bad faith? That I'm not sure of, Your Honor. Perhaps not. But certainly we suggest that there was a reaction to a social media outcry and not any decision made for profit motive or other business reason, simply because of concern about this one incident. Your Honors, we'd also rely on the HAARP case that Delta relied upon, because in that case, the plaintiff was being provided with a special service. It was allowed to load its cotton in a way, its coal, excuse me, in a way that other shippers were not loading their coal. And so when the carrier there withdrew that service, it was not withdrawing or changing the scope of its carrier services, but it was withdrawing a privilege that it was offering to that one shipper. When a carrier is changing, and the court even said there, a carrier can't change the scope of its services. It can't arbitrarily, capriciously, whimsically, or without reasonable grounds change the scope of its services. But it can withdraw a privilege that is being offered to one shipper and not to others. And that's consistent in the common law case law. And lastly, Your Honors, we would just point out that in most of the cases Delta relies on, a carrier has instituted exclusions in what it carries at the beginning and not midway or late in the game in terms of what it's been carrying. And again, here on the facts, Delta had affirmed it was going to continue to carry trophies and then suddenly stopped carrying trophies after the Cecil DeWine incident. Thank you. Thank you, counsel.